**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| United States of America,<br><br>    Plaintiff<br><br>v.<br><br>Michael Kroger,<br><br>    Defendant | Case No.: 2:13-cr-00232-JAD-VCF-2<br><br>**Order Denying Motion for Compassionate Release and Granting Motion to Seal**<br><br>[ECF Nos. 183, 186] |

    Michael Kroger is serving a 20-month sentence at Federal Correctional Institution Mendota (FCI Mendota) for conspiracy to commit mail fraud and wire fraud.[1] He now moves for compassionate release because he is 61 years old and suffers from chronic obstructive pulmonary disease (COPD), an unspecified mood disorder, and atherosclerosis, all of which put him at a greater physical risk for COVID-19.[2] The government opposes the motion, arguing that Kroger has failed to prove he has COPD and had, at the time of filing, only served a fourth of his sentence.[3] Though I am sympathetic to Kroger's conditions and the challenges of incarceration during a pandemic, after considering his ailments and the relevant factors under 18 U.S.C. § 3553(a), I deny his motion because a reduction of his already reduced sentence is unwarranted.

**Background**

    Last year, Kroger pled guilty, without a plea agreement, to one count of conspiracy to commit mail fraud and wire fraud.[4] Kroger's underlying offense involved a several-year scheme in which he and others contacted timeshare owners, tricked them into thinking that he had a

---

[1] 18 U.S.C. § 1349.

[2] ECF No. 183 (motion for compassionate release).

[3] ECF No. 185 (response).

[4] ECF No 171 at 1.

buyer for their property, and negotiated a fee for alerting the owners of the fictitious buyer. At sentencing, I noted that he stole nearly $800,000 from approximately a thousand victims. But given Kroger's limited criminal history, his success for six years on pretrial supervision, his role in the scheme, his age, and the crime's non-violent nature, I sentenced him to 20 months imprisonment.

When he filed this motion, Kroger had served only four months of his sentence.[5] He is 61 years old and suffers from COPD, an unspecified mood disorder, and atherosclerosis. Kroger seeks an order releasing him from prison and reducing his sentence to time served, or alternatively allowing him to finish his sentence at home as a condition of his supervised release, contending that his conditions put him at a significant risk of severe complications or death should he contract COVID-19 and that the § 3553(a) factors support his release.[6] The government opposes his request, arguing that Kroger does not have evidence that he actually has COPD so no extraordinary and compelling reasons warrant his release, and that he has only served a portion of his sentence.[7]

## Discussion

The compassionate-release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018, permits a sentencing judge to reduce a sentence based on "extraordinary and compelling reasons" once the defendant has failed to get the Bureau of Prisons (BOP) to bring such a motion on his behalf, or once 30 days have passed since the warden of the facility where the defendant is held denies his request.[8] The court must consider any applicable factors

---

[5] ECF No. 183-1 at 2 (Ex. A to motion).
[6] ECF No. 183.
[7] ECF No. 185 at 5–6.
[8] 18 U.S.C. § 3582(c)(1)(A)(i).

under 18 U.S.C. § 3533(a) and whether a sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission."[9]  This includes ensuring that the defendant "is not a danger to the safety of any other person or to the community."[10]  The parties do not dispute that Kroger's motion is ripe for review.[11]

      Kroger argues that because of his chronic obstructive pulmonary disease and his age, he is at a high risk for serious illness if he contracts COVID-19.[12]  The CDC has confirmed that "[h]aving COPD . . . is known to increase [an individual's] risk of severe illness from COVID-19" and recommends that individuals with COPD continue with current medications."[13]  The government does not dispute the severity of COPD, but argues that Kroger's subjective complaints of COPD, which arose months before he self-surrendered to prison, do not prove he has COPD.[14]  To support this argument, the government submits Kroger's medical records, which it misreads as confirming its theory.  During his initial examination, Kroger told medical staff that he suffered from COPD and used an inhaler for the condition.[15]  Though the initial record indicates that he had no history of COPD, relatively clear lung sounds, and denied

---

[9] *Id.*

[10] U.S.S.G. § 1B1.13(2).

[11] ECF Nos. 183 at 10 (motion for compassionate release), 185 at 3 (response); *see* ECF Nos. 183-2 (Ex. C to motion), 185-1 (Ex. A to response).

[12] ECF No. 183 at 11.  Although Kroger notes many ailments, his request is centered around his COPD and age.  And because only his age and COPD have been recognized by the CDC as placing him at a greater risk for serious illness or death because of COVID-19, *People with Certain Medical Conditions*, CDC (Sept. 11, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html, I analyze whether only those conditions present extraordinary and compelling reasons to justify his release.

[13] *Certain Medical Conditions*, *supra* note 12.

[14] ECF No. 185.

[15] ECF 184 at 2 (Ex. B to motion).

3

tobacco use, medical staff prescribed Kroger an albuterol inhaler to use daily, and ordered a chest x-ray to examine his respiratory ailments.[16] Dr. Farhad Khorashadi reviewed Kroger's x-ray and confirmed that it was consistent with COPD.[17] Dr. Khorashadi noted that it showed "hyperinflation of the lungs with some basilar mild scarring changes [and f]lattening of the hemidiaphragm," which Kroger argues occurs in individuals with COPD.[18] The government challenges this finding, because the report also notes that the x-ray was "normal" and did not show acute cardiopulmonary disease. But it fails to articulate how this finding is inconsistent with Kroger's COPD diagnosis, which as a chronic illness, would likely not be characterized as an "acute" cardiopulmonary disease. Thus, Kroger has shown that he has COPD that puts him at a higher risk of serious illness or death if he contracts COVID-19.

Kroger also argues that his risk of serious illness or death is compounded by the BOP's inability to keep him safe from the virus. He contends that the BOP only screens inmates and does not actually test them for the virus.[19] Kroger maintains that the number of cases is rapidly growing in prisons, proving that they cannot contain the spread of the virus. Though I do not

---

[16] *Id.* at 3. To support his motion, Kroger filed his medical records under seal but did not comply with Local Rule IA 10-5, which requires that a party must move for leave to file those documents under seal. *See* ECF Nos. 184, 191. But because Kroger's medical privacy is a compelling reason to seal the records that he relies on in his motion, I do not unseal them. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). Counsel is advised to consult the local rules and file the appropriate motion before filing any additional documents under seal. L.R. IA 10-5.

[17] ECF No. 187 at 48.

[18] *See* ECF No. 190 at 5 (citing Eric J. Olson, *Hyperinflated Lungs: What Does It Mean?*, Mayo Clinic (Nov. 30, 2017), https://www.mayoclinic.org/diseases-conditions/emphysema/expert-answers/hyperinflated-lungs/faq-20058169 ("Hyperinflated lungs are often seen in people with chronic obstructive pulmonary disease . . . ."); Jon Johnson, *Does COPD Show Up on an X-ray?*, Medical News Today (Oct. 17, 2018), https://www.medicalnewstoday.com/articles/323363 (noting that hyperinflation and a flattened diaphragm are common in chest x-rays of individuals with COPD).

[19] ECF No. 183 at 13–18.

4

find the government's disagreement with Kroger's COPD diagnosis compelling, the concern Kroger posed when he filed this motion in June has been largely minimized by the numbers of COVID-19 cases that FCI Mendota has seen. Of the less than one thousand total inmates there, only six inmates have had the virus—three are currently infected, and fortunately, zero have died.[20] These numbers offer a promising sign that FCI Mendota's mitigation efforts are not ineffective as Kroger predicted. Kroger's argument that an influx of COVID-19 patients would make it unlikely that the prison could adequately treat his COPD is similarly unpersuasive because he has not shown that the prison in any way has failed to care for his conditions. As he notes, the prison fills his prescription for an albuterol inhaler to treat his COPD monthly.[21] And although Kroger indicates that his conditions of imprisonment are now more severe due to the precautions the BOP is implementing, this alone is not a compelling or extraordinary reason to justify his release. So I do not find that Kroger has demonstrated extraordinary and compelling reasons for compassionate release.

     Even if I were to find that Kroger's conditions are extraordinary and compelling circumstances that warrant his release, I would still deny his request because the short time that he has served of his sentence weighs heavily against his early release. Kroger has served less than half of his 20-month prison sentence. At his sentencing, I considered his lack of criminal history, his age, and his full compliance for six years on pretrial release. I also considered that his offense was non-violent. But although Kroger pled guilty to a non-violent offense, his actions were not without serious impact on the community. As I noted at his sentencing, the crime for which he was sentenced involved a well-orchestrated and executed scheme that

---

[20] *COVID-19 Cases*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Oct. 7, 2020).

[21] ECF No. 190 at 5–6.

constantly evolved to evade law enforcement detection, and it seriously impacted many victims. At that time, I also noted that Kroger had not demonstrated remorse for his actions.

There are many factors that also weigh in Kroger's favor. During his time in prison, Kroger has been an outstanding inmate with no issues. This is unsurprising given the six years he spent without issue on pretrial, his limited criminal history, and the fact that he has only been in prison for a handful of months. But though I have again carefully considered the factors that weigh positively in Kroger's favor, releasing him now would provide too great of a sentence reduction. Based on his limited criminal history, the guideline range for his sentence was 30–37 months. But given the factors that weighed in his favor, I varied down to a sentence of only 20 months imprisonment. To date, he has served only eight months of his sentence. So releasing Kroger now would incongruently punish his conduct and create a sentence disparity among defendants guilty of similar conduct.[22] Given that disproportionate outcome, I cannot justify cutting his already lenient sentence to less than one half.[23] I thus find that Kroger's original sentence remains sufficient but not greater than necessary to reflect the seriousness of his offense, afford adequate deterrence, and protect the public from further crimes.

**Conclusion**

IT IS THEREFORE ORDERED that Kroger's emergency motion for compassionate release **[ECF No. 183] is DENIED**.

---

[22] 18 U.S.C. § 3553(a)(6).

[23] Kroger's request to serve his remaining sentence on home confinement is misplaced because decisions about where an inmate in BOP custody serves his sentence are vested exclusively in the BOP. *See* 18 U.S.C. §§ 3621(b), 3624. Even if I construed Kroger's request as one to add a condition of home confinement to his terms of supervised release, I would still deny it because it creates the same disparity in sentencing for similar conduct.

IT IS FURTHER ORDERED that the Government's unopposed motion to file Kroger's medical records under seal **[ECF No. 186] is GRANTED**. The Clerk of Court is directed to maintain the seal on ECF Nos. 184, 187, and 191.

_____
U.S. District Judge Jennifer A. Dorsey
October 7, 2020